# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **DEMOS REVELIS and MARCEL MAAS,** | |
| Plaintiff, | |
| v. | Case No. 11 C 1991 |
| **JANET NAPOLITANO,** Secretary, Department of Homeland Security, and **ERIC H. HOLDER, JR.,** Attorney General of the United States, | Hon. Harry D. Leinenweber |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

The Plaintiffs, Demos Revelis ("Revelis") and Marcel Maas ("Maas") (collectively, the "Plaintiffs"), are a same-sex couple who married in Iowa. They seek to challenge the constitutionality of Section 3 of the Defense of Marriage Act (the "DOMA"), 1 U.S.C. § 7. Defendants, Secretary of the Department of Homeland Security Janet Napolitano and Attorney General Eric Holder (collectively, the "Defendants") move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Additionally, in the event the motion is denied, the Bipartisan Legal Advisory Group of the U.S. House of Representatives (the "BLAG") seeks leave to intervene to defend the constitutionality of the DOMA. For the reasons stated herein, Defendants' Motion to Dismiss is denied. BLAG's Motion to Intervene for a Limited Purpose is granted.

## I. BACKGROUND

### A. Facts

The following facts are taken from the Plaintiffs' Complaint. Revelis is a United States citizen, while Maas is a native and citizen of the Netherlands. The couple lives in Chicago, Illinois.

Maas last entered the country through the Visa Waiver Program in 1999. He and Revelis began dating, moved in together in 2002, and were married in Davenport, Iowa on Christmas Eve in 2010. The couple wants to remain in the United States, so Revelis has filed a visa petition, called an I-130 Petition for Alien Relative, on behalf of Maas. Such a visa petition, if approved, would allow Maas to apply for lawful permanent residency in the United States. 8 U.S.C. § 1151(b)(2)(A)(I); 8 U.S.C. § 1154(a)(1)(A)(I).

On March 10, 2011, the couple was interviewed on the visa petition at the Chicago field office of the U.S. Citizenship and Immigration Services (the "USCIS"), an agency of the Department of Homeland Security. Plaintiffs assert that there has been no allegation that their marriage was entered into in bad faith, but that regardless of the validity of their marriage, DOMA prohibits the USCIS from approving the visa petition. The agency has not yet ruled on the petition.

### B. Regulatory and Legal Framework

Under the Immigration and Nationality Act (the "INA"), United States citizens may petition the Attorney General to classify their

spouses as immediate relatives.  8 U.S.C. § 1101, *et seq.*  If approved, this allows non-citizen spouses to be granted permanent resident status ahead of other immigrants who want to make their home in the United States.  8 U.S.C. § 1151(b); *Smith v. I.N.S.*, 684 F.Supp. 1113, 1115 (D. Mass. 1988).

In order to determine whether a marriage is valid for immigration purposes, the USCIS must determine whether the marriage is valid under state law and whether it qualifies under the INA.  *In re Lovo-Lara*, 23 I. & N. Dec. 746, 748 (citing *Adams v. Howerton*, 673 F.2d 1036, 1038 (9th Cir. 1982)).  The validity of a marriage under state law is generally determined by the law of the place where the marriage was celebrated.  *Lovo-Lara*, 23 I. & N. Dec. at 748.

The INA does not define the word spouse or refer to the sex of the parties.  *Id.*  However, the USCIS follows the federal definition of marriage and spouse as provided by Section 3 of the DOMA.  *Id.* at 748-49.  DOMA provides:

> In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word "marriage" means only a legal union between one man and one woman as husband and wife, and the word "spouse" refers only to a person of the opposite sex who is a husband or a wife.

1 U.S.C. § 7.  As such, for immigration purposes "there is no question that a valid marriage can only be between a man and a woman.  Marriages between same-sex couples are excluded."  *Lovo-Lara*, 23 I. & N. Dec. at 749.

The burden of proof is on the petitioners to prove eligibility for an immediate relative visa, including that the marriage is not a sham. *See Gipson v. I.N.S.*, 284 F.3d 913 (8th Cir. 2002). If a visa petition is denied, the petitioner may appeal to the Board of Immigration Appeals (the "BIA"), which has final administrative authority. *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006). However, the BIA does not have jurisdiction to review constitutional challenges. *Calderon v. Reno*, 39 F.Supp.2d 943, 954 (N.D. Ill. 1998). If an administrative appeal is unsuccessful, the couple may seek review in the federal district court. *See Ghaly v. I.N.S.*, 48 F.3d 1426 (7th Cir. 1995).

In February 2011, the Obama Administration determined that it would no longer defend the constitutionality of Section 3 of DOMA, reasoning that heightened scrutiny should apply to DOMA and that under that standard, it was unconstitutional. *See* D.E. 15, Ex. A (letter from Attorney General Holder to Kerry Kircher, General Counsel for the U.S. House of Representatives). However, President Obama has instructed executive agencies to continue to comply with the law until it is repealed or the judiciary makes a definitive ruling as to its constitutionality. *Id.*

Although Defendants will not defend the constitutionality of DOMA (hence the motion to intervene by BLAG), they have moved to dismiss this action pursuant to FED. R. CIV. P. 12(b)(1). Defendants argue that because the USCIS has not yet acted on the petition,

Plaintiffs lack standing and any dispute over the constitutionality of DOMA is unripe. The Court will consider each Motion and its applicable law in turn.

## II. **MOTION TO DISMISS**

### A. Legal Standard

Federal courts are courts of limited jurisdiction and have only the power authorized by Article III of the Constitution to hear actual cases or controversies. *Allen v. Wright*, 468 U.S. 737, 750 (1984). Both standing and ripeness are case-or-controversy doctrines that limit federal judicial power. *Id.* Plaintiffs have the burden of establishing that jurisdiction is proper in light of these limitations. *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). The Court accepts Plaintiffs' well-pleaded factual allegations as true and draws reasonable inferences in their favor. *Id.* However, the Court may look beyond the pleadings if necessary to determine whether subject-matter jurisdiction exists. *Hay v. Ind. State Bd. of Tax Comm'rs,* 312 F.3d 876, 879 (7th Cir. 2002).

Plaintiffs' Complaint sets forth three bases for this Court's jurisdiction: federal question jurisdiction under 28 U.S.C. § 1331; jurisdiction under the Administrative Procedures Act (the "APA"), 5 U.S.C. § 701 *et seq.*; and jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. Neither the APA nor the Declaratory Judgment Act provides an independent basis for jurisdiction, however. *See*

*Califano v. Sanders*, 430 U.S. 99, 106-07 (1977); *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995).

Coupled with an appropriate jurisdictional basis, the APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. As a preliminary matter, the Court agrees with Defendants that there has been no final action here under the APA. Agency action is final and reviewable when: (1) the action marks the "consummation of the agency's decision-making process, and is not merely tentative or interlocutory; and (2) the action is one by which rights or legal obligations have been determined, or from which legal obligations flow. *W. Ill. Home Health Care, Inc., v. Herman*, 150 F.3d 659, 662 (1998) (citing *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). "The core question is whether the agency has completed its decision-making process, and whether the result of the process is one that will directly affect the parties." *Herman*, 150 F.3d at 662 (quoting *Franklin v. Mass.*, 505 U.S. 788, 797 (1992)).

Plaintiffs argue that an agency's decision to enforce a law amounts to a final agency action. They cite *Abbott Labs. v. Gardner*, 387 U.S. 136, 149-51 (1967), *abrogated in part on other grounds by Califano*, 430 U.S. at 105, for the proposition that an agency action includes rules, and posit that the agency's decision to enforce DOMA is a rule that amounts to a final action. Under the APA, a rule "means the whole or a part of an agency statement of

general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy. . . ." 5 U.S.C. § 551(4). However, a fair reading of Plaintiffs' Complaint makes it clear that Plaintiffs are not challenging an agency rule or action, but rather are challenging DOMA itself.

This does not implicate the APA, but a federal question is presented on the face of the Complaint in that it presents a substantial, disputed question of federal law; namely, whether the imminent application of DOMA to the petition violates Plaintiffs' constitutional rights. Federal question jurisdiction exists, then, provided that the claim is ripe and that Plaintiffs have standing to pursue it. *See Wikberg v. Reich*, 21 F.3d 188, 189 (7th Cir. 1994).

### B. Standing

In order to have standing, Plaintiffs must meet three prerequisites. Plaintiffs must have suffered an "injury in fact," or an invasion of a legally protected interest that is concrete and particularized, not merely hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Second, there must be a causal connection between the injury and the complained-of conduct, so that the injury is fairly traceable to the defendant's actions. *Id.* Third, it must be likely, and not merely speculative, that a ruling in favor of the Plaintiffs will redress the injury. *Id.* at 561.

Plaintiffs argue they have a legally protected interest in the processing of the visa petition because the INA gives Maas a

statutory right to apply for permanent residence if the I-130 is approved, but DOMA prevents the USCIS from considering their petition on the merits. There can be no question that both Revelis and Maas have "a valuable right at stake in the marriage petition process." *Ali v. INS*, 661 F.Supp. 1234, 1242 n.5 (D. Mass. 1986). Further, a citizen, like Revelis, has a statutory right to petition the government to have his alien spouse declared an immediate relative. *Id.* at 1246 n.6; *see* 8 U.S.C. § 1154 (providing that, after an investigation, the Attorney General *shall* approve an immediate relative petition if he determines that the facts in the petition are true and the alien on behalf of whom the petition is made qualifies as an immediate relative under the INA) (emphasis added). Plaintiffs argue that because of DOMA, Maas can never meet the definition of an immediate relative under INA, even if the USCIS decides that his marriage would otherwise qualify him. *See Lovo-Lara*, 23 I. & N. Dec. at 749.

In arguing that Plaintiffs lack standing, Defendants contend that Plaintiffs cannot have been injured by DOMA because no decision has yet been reached on Revelis' I-130 petition. It could be granted, Defendants contend, or denied for a reason having nothing to do with DOMA. *See Ali*, 661 F.Supp. at 1238-39 (noting that immigration officials use a variety of investigatory techniques to determine whether marriages between citizens and aliens are shams).

The Court notes that the Administration's approach to immigration issues involving same-sex couples appears to be in flux, at least in regard to its use of discretion in removal cases. In April, Attorney General Holder ordered the Board of Immigration Appeals to vacate its decision applying Section 3 of DOMA to deny an alien's request for cancellation of removal. *In re Dorman*, 25 I. & N. Dec. 485 (2011). However, the Administration followed that up with public statements indicating that the *Dorman* case did not signal a sea change, and that the Administration would continue to enforce DOMA until and unless it is ruled unconstitutional. Julia Preston, *Justice Dept. to Continue Policy Against Same-Sex Marriage*, *N.Y. Times*, May 9, 2011, at A15.

Subsequently, in June, the Administration issued a memorandum providing guidance to Immigration and Customs Enforcement ("ICE") personnel about the exercise of discretion in removal cases. The memorandum, from U.S. Department of Homeland Security Director John Morton, notes that ICE has limited personnel and must prioritize its efforts to focus on the removal of those aliens with criminal records or who pose a threat to national security. In exercising discretion, Morton advised that ICE officers and attorneys should take into account a person's family relationships, including whether the person has a U.S. citizen spouse. *Memorandum from John Morton, Director of the U.S. Department of Homeland Security, to ICE Field Directors, Special Agents in Charge, and Chief Counsel* (June 17, 2011),

*available at* http://www.ice.gov/doclib/secure-communities/pdf/prosecutorial-discretion-memo.pdf (the "Morton Memo").

The Morton Memo does not address same-sex married couples, although the policies behind it have been used to extend relief from removal to same-sex couples in certain instances. *See* Julia Preston, *U.S. Issues New Deportation Policy's First Reprieves*, *N.Y. Times*, Aug. 23, 2011, at A15 (noting that an immigration judge in Denver postponed the deportation of a Mexican woman in a legal same-sex marriage on the basis of their family relationship).

It is clear that the Administration has exercised discretion to stop the removal of at some immigrants who are parties to legal same-sex marriages. But despite this, DOMA remains a barrier to same-sex spouses like Maas who are seeking lawful status in this country. DOMA remains the law, and it remains the official policy of the Administration to enforce it. Defendants acknowledge this in their brief in response to BLAG's motion to intervene, noting that "the Executive departments and agencies will continue to comply with Section 3, pursuant to the President's direction, unless and until Section 3 is repealed by Congress or there is a definitive ruling by the Judicial Branch that Section 3 is unconstitutional." Defs.' Resp. to Motion of BLAG to Intervene for a Limited Purpose, at 2. This acknowledgment is in some tension with Defendants' indication in

their reply brief that Plaintiffs can only speculate as to the outcome of the petition.

Given the current state of the law, it seems clear that DOMA precludes the granting of Revelis' spousal visa petition for Maas. While it is true that the petition could be denied for a variety of reasons having nothing to do with DOMA, that could happen to any couple. While perhaps inartfully pleaded, the injury that Plaintiffs allege is broader than the expected denial of the petition. They contend that because of DOMA, they will not be treated like any other couple. *See* Pls.' Compl. ¶ 24-28. There is a thumb on the scale against them, and even if they are otherwise qualified, it is a practical certainty that Revelis' petition will be denied. This is a government-imposed barrier to obtaining a benefit available to other legally married couples, and it confers standing upon Plaintiffs. *See Sherwin Manor Nursing Ctr., Inc. v. McAuliffe,* 37 F.3d 1216, 1220 (7th Cir. 1994) (noting that the denial of equal protection itself is an injury that confers standing).

It is this imminent injury — their inability to be treated on equal footing with other married couples — that Plaintiffs ask this Court to redress. Pre-enforcement challenges are within Article III despite the fact that events may unfold in uncertain ways. *See Brandt v. Vill. of Winnetka*, 612 F.3d 647, 649 (7th Cir 2010). In the equal protection context, the Supreme Court has held that "[w]hen the government erects a barrier that makes it more difficult for

members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The 'injury in fact' in an equal protection case . . . is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *See Ne. Fla. Chap. of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). While Revelis has no right to have his visa petition on Maas' behalf granted, he does have a right to have the petition considered "without the burden of invidiously discriminatory disqualifications." *Turner v. Fouche*, 396 U.S. 346, 362 (1970).

Defendants argue that until a decision is reached on the visa petition, it is not clear that DOMA is the cause of Plaintiffs' injury or that any ruling invalidating DOMA will redress that injury. However, this argument misapprehends the nature of the injury, which is the denial of equal access to the visa program, not the expected denial of the petition. Although in equal protection cases the constitutional challenge often comes after a plaintiff has applied for a benefit and been rejected, there is nothing that mandates that a plaintiff wait until rejection to file suit. *See Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 281 n. 14 (1978) (noting that plaintiff was injured not only by his rejection from medical school, but by his inability to compete for all the places in the class).

In a similar context, in *Dragovich v. U.S. Department of the Treasury*, 764 F.Supp.2d 1178, 1187 (N.D. Cal. 2011), the court held that the plaintiffs, a same-sex married couple, did not have to apply to a benefit program in order to have standing to challenge it because it would have been futile to apply and because the couple adequately alleged that they were eligible for the program. See *id.* ("A plaintiff sufficiently alleges injury when a discriminatory policy has interfered with the plaintiff's otherwise equal ability to compete for the program benefit.").

Here, Plaintiffs have asked to be considered for the benefit of a spousal visa, and there is nothing in their Complaint that indicates they are otherwise disqualified from consideration. *Cf. Filozof v. Monroe Community College*, 583 F.Supp.2d 393, 403 (W.D.N.Y. 2008) (finding no standing where plaintiff was not "able and ready" to attempt to participate in the challenged programs). It is true that if an applicant could not have obtained the desired benefit even in the absence of discrimination, "such an applicant lacks the requisite personal stake in the outcome" of the proceeding to have standing. *See Day v. Bond*, 500 F.3d 1127, 1134 (10th Cir. 2007). But Plaintiffs do not have to show that they will obtain the benefit, but merely that they could. *Id.* at 1135. In this case, Plaintiffs assert that they are otherwise eligible for approval of the spousal visa petition, but DOMA bars its approval.

This burden is fairly traceable to Section 3 of DOMA, and a ruling by this Court invalidating that statute would redress the injury. *See Ne. Fla. Gen. Contractors*, 508 U.S. at 666 n. 5 (holding that when injury is the erection of a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, the barrier is the cause of the injury, and a ruling removing it redresses the injury). So the Plaintiffs do have standing, provided that their claim is ripe.

The Court notes that it has not prejudged the merits of Plaintiffs' equal protection challenge; standing and entitlement to relief are two separate inquiries. *See Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008).

### C. Ripeness

In order for this Court to exercise jurisdiction, a case or controversy must be ripe, meaning that it is neither premature nor speculative. *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002). Defendants contend that because Revelis' petition is still pending, it cannot be ripe for review before this Court.

Like standing, ripeness is a justiciability doctrine. As noted above, to assert standing, the plaintiff must present either an actual or threatened harm resulting from the allegedly illegal action. *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). Ripeness is a related question in that it concerns whether the harm has matured sufficiently to warrant judicial relief. *Id.* at 499 n. 10. The

ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat. Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 57, n. 18 (1993)). Here, the inquiries as to ripeness and standing overlap in that Defendants' main argument as to both is that Plaintiffs cannot know if they will be injured until the USCIS acts on the petition.

Ripeness involves two inquiries: (1) the fitness of the issues for judicial decision; and (2) the hardship to the parties of withholding court consideration. *Nat. Park Hospitality Ass'n*, 538 U.S. at 808 (internal citations omitted). In terms of the fitness of the issues for judicial decision, the constitutionality of Section 3 of DOMA presents a purely legal question. This weighs in favor of finding the dispute ripe, because the question of whether applying DOMA to Plaintiffs violates their right to equal protection does not require further factual development. *See Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 536 (1st Cir. 1995). Defendants argue, correctly, that courts should exercise caution in deciding even purely legal issues when constitutional issues are involved, particularly when there are inadequacies or ambiguities in the record. *See Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002).

However, the record is adequate to decide the issues presented here. As noted in regard to the standing inquiry, Plaintiffs are not requesting that this Court order the government to grant the visa petition. Instead, they are requesting that their petition be reviewed and decided on the same basis as other married couples. This is a legal question that is fit for judicial review because Revelis has filed a pending visa petition. Additionally, because Plaintiffs cannot raise the constitutionality of DOMA during the marriage petition process, no further administrative record will be developed on that issue.

As for the question of hardship, "the hallmark of cognizable hardship is usually direct and immediate harm." *Ernst & Young*, 45 F.3d at 536. This is not the type of case in which the harm at issue depends on "a lengthy chain of speculation as to what the future has in store." *Id.* at 538. As noted above, it is nearly certain that USCIS will apply DOMA as at least one basis to deny Plaintiffs' petition, given that the official policy of the Administration is that DOMA will be enforced. This alleged imminent denial of equal protection is a direct and immediate harm. As such, this dispute is ripe, and Defendants' Rule 12(b)(1) Motion to Dismiss is denied.

### III. <u>**MOTION TO INTERVENE**</u>

Plaintiff opposes BLAG's motion to intervene, arguing that it should be limited to *amicus curiae* status. Defendants ask that BLAG's involvement be limited to making substantive arguments in

support of DOMA, while they continue to file all procedural notices. BLAG argues that intervention as a matter of right under Fed. R. Civ. P. 24(a)(2) is appropriate for the limited purpose of defending the constitutionality of the law. That rule states, in relevant part:

> **(a) Intervention of Right**. On timely motion, the court must permit anyone to intervene who:
>
> **(1)** is given an unconditional right to intervene by a federal statute; or
>
> **(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Court agrees with BLAG that intervention as of right is appropriate under Rule 24(a)(2). The Seventh Circuit has held that intervention is appropriate under this rule when the petitioner: (1) makes a timely application; (2) has an interest relating to the subject matter of the action; (3) that would potentially be impaired by the disposition of the action; and (4) is not adequately represented by the existing parties to the action. *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995).

Here, there is no dispute that BLAG's application was timely. But Plaintiffs argue that BLAG merely has a general interest in the outcome of this litigation that is no greater than that of an ordinary taxpayer. The Court disagrees. The House has an interest in defending the constitutionality of legislation which it passed

when the executive branch declines to do so. *See I.N.S. v. Chadha*, 462 U.S., 919, 940 (1983) ("We have long held that Congress is the proper party to defend the validity of a statute when an agency of government, as a defendant charged with enforcing the statute, agrees with plaintiffs that the statute is inapplicable or unconstitutional."). Plaintiffs' argument that BLAG does not represent Congress as a whole is similarly unpersuasive. BLAG, a five-member bipartisan group, is the mechanism through which the House presents its position in litigation, and courts have allowed it to intervene in cases where appropriate. *See, e.g., In re Matter of Koerner*, 800 F.2d 1358, 1360 (5th Cir. 1986) (allowing intervention by BLAG predecessor when administration declined to defend law retroactively extending the term of bankruptcy judges); *Barnes v. Kline*, 759 F.2d 21, 23, n.3 (D.C. Cir. 1985) (similarly allowing intervention under Rule 24(a)(2) in dispute over "pocket vetoes."), *vacated on other grounds sub. nom. by Burke v. Barnes*, 479 U.S. 361 (1987).

Impairment under the meaning of Rule 24(a)(2) depends on whether a ruling on a legal question would as a practical matter foreclose the intervenor's rights in a subsequent proceeding. *See Zurich Capital Mkts. Inc. v. Coglianese*, 236 F.R.D. 379, 386 (N.D. Ill. 2006). Such foreclosure is measured by the general standards of *stare decisis*. *Id.* (internal citations omitted). BLAG's interest in upholding the constitutionality of DOMA in this and subsequent

proceedings plainly would be impaired by a ruling in favor of Plaintiffs.

Finally, it is clear that BLAG's interests are not protected by anyone else in this litigation. Plaintiffs and Defendants agree that DOMA violates equal protection. The Court finds the recent ruling in *United States v. Windsor*, 797 F.Supp.2d 320 (S.D.N.Y. 2011) to be persuasive. There, BLAG moved to intervene in a dispute over the constitutionality of DOMA in a tax refund case. *Id.* at 322. The Court noted that while the Department of Justice had made it clear that it would not defend the statute, that was exactly what BLAG wanted to do. *Id.* at 324. In *Windsor*, as in this case, the DOJ sought to continue to file all procedural motions, while BLAG appeared only to argue the constitutionality of DOMA. *Id.* at 324-25. The Court rejected that argument, finding that there was no precedent supporting the executive branch's request that BLAG's participation in the case be circumscribed in that manner. *Id.* This Court agrees.

One potential difference between this case and *Windsor*, however, is that the Second Circuit, in which that dispute is pending, does not require intervenors to establish independent Article III standing as long as there is a case or controversy pending between the existing parties. *Id.* at 325. The Seventh Circuit has not yet ruled on this issue. *See Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000). However, the Seventh Circuit has observed that any interest of such magnitude as to allow intervention of right is

proceedings plainly would be impaired by a ruling in favor of Plaintiffs.

Finally, it is clear that BLAG's interests are not protected by anyone else in this litigation. Plaintiffs and Defendants agree that DOMA violates equal protection. The Court finds the recent ruling in *United States v. Windsor*, 797 F.Supp.2d 320 (S.D.N.Y. 2011) to be persuasive. There, BLAG moved to intervene in a dispute over the constitutionality of DOMA in a tax refund case. *Id.* at 322. The Court noted that while the Department of Justice had made it clear that it would not defend the statute, that was exactly what BLAG wanted to do. *Id.* at 324. In *Windsor*, as in this case, the DOJ sought to continue to file all procedural motions, while BLAG appeared only to argue the constitutionality of DOMA. *Id.* at 324-25. The Court rejected that argument, finding that there was no precedent supporting the executive branch's request that BLAG's participation in the case be circumscribed in that manner. *Id.* This Court agrees.

One potential difference between this case and *Windsor*, however, is that the Second Circuit, in which that dispute is pending, does not require intervenors to establish independent Article III standing as long as there is a case or controversy pending between the existing parties. *Id.* at 325. The Seventh Circuit has not yet ruled on this issue. *See Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000). However, the Seventh Circuit has observed that any interest of such magnitude as to allow intervention of right is

sufficient to satisfy the Article III standing requirement. *Transamerica Ins. Co. v. South*, 125 F.3d 392, 396 (7th Cir. 1997). Because of the magnitude of the interest at stake here, and because no other party in this litigation will represent the interests of BLAG, the Court finds that intervention as of right is appropriate, and grants BLAG's motion. BLAG may intervene for the purpose of defending the constitutionality of DOMA, and is to answer or otherwise plead within thirty (30) days of the date of this Order.

### IV. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss is denied. BLAG's Motion to Intervene for a Limited Purpose is granted. BLAG is to answer or otherwise plead within thirty (30) days of the date of this Order.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 1/5/2012